NORMAN TUCHMAN ET AL. *v.* STATE OF CONNECTICUT ET AL.
(AC 24792)

Lavery, C. J., and DiPentima and McLachlan, Js.

Argued February 14—officially released June 24, 2005

*Kenneth A. Votre,* for the appellants (plaintiffs).

*Mark P. Kindall,* assistant attorney general, with whom were *David H. Wrinn,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Kimberly P. Massicotte,* assistant attorney general, for the appellees (defendants).

*Opinion*

McLACHLAN, J. The plaintiffs, Norman Tuchman, Alan Tuchman and Bechem Transport, Inc., appeal from the judgment of the trial court dismissing their action against the defendants, the state of Connecticut, the department of environmental protection (department) and David A. Nash, both individually and in his capacity as an employee of the department. The plaintiffs also challenge the court's denial of their subsequent motion for reconsideration. The plaintiffs claim that the court improperly concluded that it lacked subject matter jurisdiction to entertain the action on the basis of the doctrines of sovereign immunity, qualified immunity and statutory immunity. We affirm the judgment of the trial court.

The following facts are alleged in the plaintiffs' complaint. At all times relevant to this action, Norman Tuchman and Alan Tuchman owned and operated Bechem Transport, Inc., a corporation engaged in the business of transporting chemicals and hazardous waste products within the state of Connecticut through a facility located in New Haven. The plaintiffs were registered and licensed to conduct this activity within the state. As part of the business, the plaintiffs also engaged in the "transshipping" of hazardous waste. Although the term "transship" is not used in the state's environmental statutes, the plaintiffs maintain, and the defendants do not dispute, that the term refers to the process of transferring waste from one transportation vehicle to another vehicle, allowing loads to be consolidated for

further shipment. For several of the years that the plaintiffs engaged in transshipment, no statutes or regulatory provisions specifically governed this activity.

In 1991, the General Assembly enacted legislation that authorized the department to regulate the transshipment of hazardous waste, including issuing permits. See Public Acts 1991, No. 91-313, § 1. At that time, the legislature also amended General Statutes § 22a-454 to provide as follows: "(c) No person shall engage in the business of the transfer of hazardous waste from one vehicle to another or from one mode of transportation to another without a permit from the commissioner issued under subsection (a) of this section." Public Acts 1991, No. 91-313, § 2. The plaintiffs purport, and the state does not dispute, that the department did not take advantage of its regulatory authority pertaining to the transshipment of hazardous waste until approximately 1998 and that until that time, the plaintiffs conducted transshipment activities without a permit.[1]

On August 24, 1998, the department issued a notice of violation to the plaintiffs, ordering them to cease and desist all transshipment activities or face fines of up to $25,000 per day. The plaintiffs complied with the cease and desist order and then applied for a permit to transship. This application was denied by the department. The plaintiffs maintain, and the defendants do not dispute, that the department has never issued a permit to any business for the transshipment of hazardous waste.

On January 3, 2003, the plaintiffs brought this action against the defendants.[2] The plaintiffs alleged various

[1] The plaintiffs maintain that between 1992 and 1998 they transshipped waste with the implicit knowledge and approval of the department because, during this time period, the department regularly inspected the plaintiffs' business and never raised any issues concerning this activity.

[2] In August, 2001, the plaintiffs brought suit against the defendants in the United States District Court for the District of Connecticut with a complaint essentially identical to the complaint in this action. The defendants filed a

violations of both state and federal law, including, inter
alia, violations of 42 U.S.C. § 1983 et seq., the fifth and
fourteenth amendments to the United States constitu-
tion, and violations of the due process and equal protec-
tion clauses of the constitution of Connecticut.[3] The
plaintiffs sought a declaratory judgment that the defen-
dants had violated their rights under the Connecticut
and United States constitutions, a permanent injunction
to restrain the defendants from prohibiting them from
operating their business, compensatory and punitive
damages, and attorney's fees.

On February 6, 2003, the defendants filed a motion to
dismiss the entire complaint for lack of subject matter
jurisdiction. In their supporting memorandum of law,
the defendants argued that the state, the department
and Nash in his official capacity were protected from
suit by the doctrine of sovereign immunity and that no
exception to the doctrine was applicable. They argued
further that Nash in his individual capacity was pro-
tected by qualified immunity with respect to the plain-
tiff's federal constitutional claims, and by statutory
immunity with respect to the claims made pursuant to
the constitution of Connecticut.

The court issued a memorandum of decision on
August 11, 2003, granting the motion to dismiss. The
court concluded that it lacked subject matter jurisdic-
tion as to all three defendants for the reasons argued
by the defendants in their memorandum of law in sup-
port of the motion to dismiss.

motion to dismiss the federal action, claiming, inter alia, that the court
lacked subject matter jurisdiction. On February 8, 2002, the court granted
the motion, and the action was dismissed.

[3] The complaint was unclear as to whether Nash was being sued in his
individual capacity as well as his official capacity. Due at least in part,
however, to the fact that both parties raised arguments in their briefs regard-
ing his individual capacity, the court construed the complaint as asserting
a claim against Nash in both his official and individual capacities.

On September 2, 2003, the plaintiffs filed a motion for reconsideration seeking reconsideration of the court's dismissal of their complaint as to Nash in his individual capacity. They argued in particular that the case of *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003), made improper the court's dismissal of this portion of their complaint. The court denied the motion for reconsideration on October 16, 2003. This appeal followed.

I

We first consider the plaintiffs' claim that the court improperly dismissed their complaint on subject matter jurisdiction grounds. We address this claim in two parts, beginning with the claims asserted against the state, the department and Nash in his official capacity, and turning then to the claims asserted against Nash in his individual capacity.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Cox* v. *Aiken*, 86 Conn. App. 587,

591–92, 862 A.2d 319 (2004), cert. granted on other grounds, 273 Conn. 916, 871 A.2d 370 (2005).

## A

The plaintiffs argue that the court improperly dismissed their claims against the state, the department and Nash in his official capacity on the basis of sovereign immunity. We disagree.

"We have long recognized the common-law principle that the state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer [or agent] concerning a matter in which the officer [or agent] represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant." (Internal quotation marks omitted.) *Bloom* v. *Gershon,* 271 Conn. 96, 107, 856 A.2d 335 (2004). The doctrine of sovereign immunity "protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." *Shay* v. *Rossi,* 253 Conn. 134, 165, 749 A.2d 1147 (2000), overruled in part on other grounds, *Miller* v. *Egan,* 265 Conn. 301, 325, 828 A.2d 549 (2003). Although the trial court did not do so, we discuss the portion of the claims against the state seeking damages separately from the portion seeking injunctive and declaratory relief.

### 1

We first consider the plaintiffs' claim for damages. In their prayer for relief, the plaintiffs sought, inter alia, "[c]ompensatory damages for deprivation of the [p]laintiffs' civil rights, out-of-pocket expenses and loss of the value of the business . . . punitive damages . . . [and] reasonable attorney['s] fees and costs."

In both the defendants' motion to dismiss and the court's memorandum of decision granting that motion, the plaintiffs' claims for damages and those for injunctive and declaratory relief were addressed together. With respect to both types of claims, the defendants argued and the court found that the doctrine of sovereign immunity barred the claims because the plaintiffs failed to demonstrate that the conduct at issue fell within one of the recognized exceptions to the doctrine. Although we agree that the claims for damages were dismissed properly, we do so on grounds different from those asserted by the trial court.

It has long been recognized that "[w]hen a plaintiff brings an action for money damages against the state, he must proceed through the office of the claims commissioner pursuant to chapter 53 of the General Statutes, §§ 4-141 through 4-165. Otherwise, the action must be dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity." *Prigge* v. *Ragaglia*, 265 Conn. 338, 349, 828 A.2d 542 (2003). This is true even where, as here, claims are brought pursuant to the United States constitution. See id. (dismissing claims seeking damages brought under first, fourteenth amendments to United States constitution where permission not received from claims commissioner).[4]

---

[4] As discussed more fully in part I A 2, the court dismissed all portions of the claims against the state because the plaintiffs failed to demonstrate that the conduct at issue fell within one of the recognized exceptions to the doctrine of sovereign immunity. As our Supreme Court recently made clear in *Miller* v. *Egan*, supra, 265 Conn. 315–16, the claimed exceptions are applicable only to claims for injunctive or declaratory relief, not to actions for damages. See also *Krozser* v. *New Haven*, 212 Conn. 415, 423, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990).

Our Supreme Court also has recognized that when an action against the state seeks damages as well as declaratory or injunctive relief, each should be treated separately. See, e.g., *Barde* v. *Board of Trustees*, 207 Conn. 59, 60–61, 539 A.2d 1000 (1988) (treating separately plaintiff's claims for injunctive relief, damages; as to damages, plaintiff required to proceed through claims commissioner; as to injunctive relief, plaintiff must establish constitutional violations); *Fetterman* v. *University of Connecticut*, 192

In the present case, the plaintiffs have not alleged, nor does the record reveal, that they received permission from the office of the claims commissioner to bring claims for damages against the state. Therefore, the doctrine of sovereign immunity bars that portion of their claims, and they were properly dismissed by the trial court.

2

Turning to the portion of the plaintiffs' claims requesting declaratory and injunctive relief, the plaintiffs argue that the court improperly concluded that sovereign immunity barred these claims and that none of the exceptions to the doctrine applied.

The sovereign immunity enjoyed by the state is not absolute, and our Supreme Court has recognized limited exceptions to the doctrine. These are: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 85–86, 818 A.2d 758 (2003); (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; *Doe* v. *Heintz*, 204 Conn. 17, 31, 526 A.2d 1318 (1987); and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. *Antinerella* v. *Rioux*, 229 Conn. 479, 497, 642 A.2d 699 (1994), overruled in part, *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). The plaintiffs argue that the second and third exceptions apply to the conduct at issue.

For both of these exceptions, our Supreme Court has imposed specific pleading requirements. For a claim

Conn. 539, 553, 473 A.2d 1176 (1984) (treating separately claims for damages, declaratory relief).

made pursuant to the second exception, complaining of unconstitutional acts, our Supreme Court has stated that "[t]he allegations of such a complaint and the factual underpinnings if placed in issue, must clearly demonstrate an incursion upon constitutionally protected interests." *Barde* v. *Board of Trustees*, 207 Conn. 59, 64, 539 A.2d 1000 (1988). For a claim under the third exception, alleging that an officer acted in excess of statutory authority, "the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." *Shay* v. *Rossi*, supra, 253 Conn. 174–75. In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper.

The plaintiffs identified two actions by the defendants that they claim satisfy the requirements for these exceptions. They refer to the defendants' refusal to grant them a transshipment permit and the subsequent issuance of a notice of violation, and argue that these actions fall within the second exception to the doctrine in that they (1) deprived them of a protected property interest without due process of law in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 8 of the constitution of Connecticut, (2) constituted a taking of property without just compensation in violation of their due process rights and (3) violated the equal protection clauses of the United States constitution and the constitution of Connecticut. The plaintiffs claim further that this same conduct falls within the third exception to the doctrine in that Nash acted in excess of his statutory authority. We address in turn each of the arguments.

a

The plaintiffs first claim that the court improperly concluded that the defendants' denial of a transshipping

permit deprived them of a protected property interest without due process of law in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut.

The fourteenth amendment to the United States constitution prohibits any state from depriving a person of "life, liberty or property, without due process of law . . . ." Article first, § 8, of the constitution of Connecticut contains the same prohibition and is given the same effect as the fourteenth amendment to the federal constitution. See *Barde* v. *Board of Trustees*, supra, 207 Conn. 64. As noted previously, to overcome sovereign immunity, the plaintiffs are required to "clearly demonstrate an incursion upon constitutionally protected interests." Id.

"Our due process inquiry takes the form of a two part analysis. [W]e must determine whether [the defendant] was deprived of a protected interest, and, if so, what process was . . . due." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 499, 778 A.2d 33 (2001). If a claimant does not sufficiently establish the existence of a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude. *Hunt* v. *Prior*, 236 Conn. 421, 442, 673 A.2d 514 (1996).

Although "property" can include statutory benefits such as permits, our Supreme Court has made clear that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, supra, 257 Conn. 499. Expounding on the parameters of cognizable property interests, the

court in *Giaimo* stated that "when a due process claim has been raised by an applicant for a statutory benefit, the applicant has a protected property interest in the benefit when, under the governing statute, the decision-making body would have no discretion to deny the application if the applicant could establish at a hearing that it met the statutory criteria." Id., 509.

Section 22a-454 (a) provides in relevant part: "No permit shall be granted, renewed or transferred unless the commissioner is satisfied that the activities of the permittee will not result in pollution, contamination, emergency or a violation of any regulation . . . ." Rather than requiring the department to issue a trans-shipment permit if an applicant meets certain conditions, this statute only *allows* the department to issue a permit if it is satisfied that the activity will not cause harm. Therefore, although the statute places constraints on the department's ability to grant a permit, there is no language in the statute that reasonably can be construed to divest the department of discretion to deny an application for a permit when it sees fit.

The court reasoned that because this statute vests in the department discretion to deny a permit if it believes the activities of the applicant do not meet certain criteria, the commissioner has discretion to deny an application and, under *Giaimo*, an applicant cannot possess a protected property interest under such circumstances. On this basis, the court concluded that the plaintiffs failed to assert the existence of a protected property interest sufficient to give rise to a due process violation.

After our plenary review of the trial court's decision, we agree that the plaintiffs' factual allegations with respect to their due process claim, if proven, would not "clearly demonstrate an incursion upon constitutionally protected interests." *Barde* v. *Board of Trustees*, supra,

207 Conn. 64. The plaintiffs did not possess a protected property interest in the transshipment permit, and the court, therefore, properly granted the defendants' motion to dismiss these claims.

b

The plaintiffs next claim that the issuance of the notice of violation substantially interfered with their ability to conduct business and thereby constituted a taking of property without just compensation.

Essential to this claim is the plaintiffs' assertion that their ability to conduct business constitutes "property" within the meaning of the takings clause.[5] The United States Supreme Court has clearly defined the limits of what can constitute property in a takings action. In this regard, the court has determined that "[t]he assets of a business . . . unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment. But business in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense . . . ." (Emphasis in original.) *College Savings Bank* v. *Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999).

The court concluded that because the plaintiffs made no claim that the defendants' issuance of a notice of violation worked a taking of any tangible business assets, but instead claimed only that the defendants prevented them from conducting their business, the notice of violation cannot be considered a taking of "property." Our plenary review of this determination convinces us that the court's reasoning was proper. The plaintiffs' allegations simply failed to allege any conduct by the defendants that would constitute a taking of

---

[5] U.S. Const., amend V.

property, as that term is utilized in our takings jurisprudence.

To the extent that the plaintiffs also claimed a protected property interest in a permit to transship hazardous waste, the court also concluded that this claim was inadequate. The United States Supreme Court has stated that "[a] mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 161, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980). When the government "merely *regulates* the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." (Emphasis in original; internal quotation marks omitted.) *Cohen* v. *Hartford*, 244 Conn. 206, 220, 710 A.2d 746 (1998), quoting *Yee* v. *Escondido*, 503 U.S. 519, 522–23, 112 S. Ct. 1522, 118 L. Ed. 2d 153 (1992).

The underlying purpose of § 22a-454 is regulatory, and the plaintiffs have made no allegation that, nor is there any evidence that, the purpose behind the permitting regulation was to single out the plaintiffs or their particular business unfairly. In fact, the plaintiffs themselves maintain that the department has never issued to any business a permit for the transshipment of hazardous waste, an assertion that would seem to undercut any claim that they have been unfairly singled out. For the foregoing reasons, the court properly determined that the plaintiffs' allegations, if proven, failed clearly to demonstrate an incursion on constitutionally protected interests. See *Barde* v. *Board of Trustees*, supra, 207 Conn. 64.

C

The plaintiffs claim next that the court improperly concluded that they failed to allege facts sufficient to support a claim of a denial of equal protection. They allege that both the denial of the transshipment permit and the department's subsequent issuance of a notice of violation violated their equal protection rights under the United States constitution and the constitution of Connecticut.

The fourteenth amendment to the United States constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Article first, § 20, of the constitution of Connecticut contains similar language and has been determined to have a like meaning and to impose similar limitations. See *Barde* v. *Board of Trustees*, supra, 207 Conn. 65.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike." (Internal quotation marks omitted.) *Stuart* v. *Commissioner of Correction*, 266 Conn. 596, 601, 834 A.2d 52 (2003). "[A]n equal protection claim based on unequal application of the law . . . must be established by competent evidence . . . showing . . . intentional or purposeful discrimination." (Citations omitted; internal quotation marks omitted.) *Golab* v. *New Britain*, 205 Conn. 17, 26, 529 A.2d 1297 (1987). "[T]he requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently . . . ." (Internal quotation marks omitted.) *Alexander* v. *Commissioner of Administrative Services*, 86 Conn. App. 677, 685, 862 A.2d 851 (2004).

After applying these principles, we determine that the court properly concluded that the plaintiffs' claims failed to allege facts sufficient to demonstrate clearly an incursion on their equal protection interests. In their complaint, the plaintiffs summarily stated that they were treated differently from other similarly situated businesses, but failed to identify the businesses that purportedly were similarly situated. Further, the plaintiffs did not allege that these businesses were issued transshipment permits or were exempted from being issued notices of violation despite engaging in transshipment without a permit or were otherwise treated differently. As previously pointed out, the plaintiffs alleged, quite to the contrary, that they have been treated exactly the same as other businesses have in that the department has never issued a permit to any business for the transshipment of hazardous waste. Furthermore, even if the plaintiffs had established these factual underpinnings, they failed further to allege facts that would support an assertion that such unequal treatment was the result of intentional or purposeful discrimination by the defendants. See *Golab* v. *New Britain,* supra, 205 Conn. 26. Accordingly, this claim was dismissed properly.

d

We turn finally to the plaintiffs' claim, made pursuant to the third exception to the doctrine of sovereign immunity, that the defendants acted in excess of their statutory authority in denying their application for a transshipment permit.

As noted previously, when asserting a claim that a state officer acted in excess of his statutory authority, "the plaintiffs must do more than allege that the defendant['s] conduct was in excess of [his] statutory authority; they also must allege or otherwise establish facts

that reasonably support those allegations." *Shay* v. *Rossi*, supra, 253 Conn. 174–75.

The court concluded, and we agree, that the plaintiffs' complaint is devoid of any factual allegations that, if proven, would reasonably support their allegation that Nash acted in excess of his statutory authority when denying the permit.

On the basis of the foregoing, we conclude that because none of the exceptions to the doctrine of sovereign immunity was sufficiently pleaded, the state, the department and Nash in his official capacity are immune from suit, and the court properly dismissed the claims against these defendants.

B

We next address the plaintiffs' claims against Nash in his individual capacity. The plaintiffs claim that the court improperly dismissed their federal and state law claims against Nash on the basis of qualified and statutory immunity, respectively. We disagree.

1

We first address the plaintiffs' federal civil rights claims under 42 U.S.C. § 1983, as to which the court determined that Nash was entitled to qualified immunity from suit.[6] The plaintiffs claim specifically that Nash violated their civil rights by issuing to them a notice of violation without statutory authority.

---

[6] In both their complaint and appellate brief, the plaintiffs appear to assert a claim under 42 U.S.C. § 1983 against the state, in addition to Nash in his individual capacity. To the extent that the plaintiffs assert such a claim, it is improper. "A state, as an entity having immunity under the eleventh amendment to the United States constitution, is not a person within the meaning of § 1983 and thus is not subject to suit under § 1983 in either federal court or state court. . . . This rule also extends to state officers sued in their official capacities." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 311.

Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." The United States Supreme Court has repeatedly expressed that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

"Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 395, 840 A.2d 557, cert. granted on other grounds, 268 Conn. 916, 847 A.2d 310 (2004).

The court determined, and we agree, that the plaintiffs failed to establish that the mere denial of a permit to transship hazardous waste worked a deprivation of any right secured by the United States constitution.[7] As

[7] In both their motion to dismiss and appellate brief, the defendants raised and argued collateral estoppel as a ground for dismissal of the plaintiffs' federal constitutional claims against Nash in his individual capacity. The trial court did not dismiss these claims on collateral estoppel grounds, electing instead to consider the sufficiency of the allegations of these claims.

The action initiated by the plaintiffs in the United States District Court for the District of Connecticut, later dismissed on subject matter jurisdiction grounds, was essentially identical to the one filed in state court, with the exception of some minor variation with regard to jurisdictional allegations and the demand for damages. The defendants argued therefore that the

previously discussed, the plaintiffs have failed to allege facts that, if proven, constitute a violation of any of the federal or state constitutional provisions to which they refer in their complaint. It therefore follows that it was "objectively reasonable" for Nash to believe that his conduct did not violate any of the plaintiffs' constitutional rights. We accordingly conclude that the court properly determined that Nash was entitled to qualified immunity as to the plaintiffs' federal constitutional claims.

2

We next address the plaintiffs' claims against Nash in his individual capacity that were asserted under the

District Court's dismissal collaterally estopped the relitigation of the same claims in state court.

We note that the trial court properly declined to dismiss the plaintiff's federal constitutional claims on collateral estoppel grounds. Although collateral estoppel is a threshold issue that must be addressed by the court at the outset, the court first must have subject matter jurisdiction to consider the type of claim asserted. "Collateral estoppel is that aspect of the doctrine of res judicata which serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction." (Internal quotation marks omitted.) *East Lyme* v. *Waddington*, 4 Conn. App. 252, 255, 493 A.2d 903, appeal dismissed, 197 Conn. 811, 499 A.2d 61 (1985). Therefore, collateral estoppel "does not implicate a court's subject matter jurisdiction. The doctrine is invoked when a litigant alleges that a party is reasserting a claim that has already been decided on the merits." *Rosenfeld* v. *McCann*, 33 Conn. App. 760, 762, 638 A.2d 631 (1994). As the court lacked subject matter jurisdiction to consider the plaintiffs' federal constitutional claims in the first instance, the court properly declined to address the defendants' claim that collateral estoppel barred the relitigation of the merits of the claim.

Furthermore, even if the court did possess subject matter jurisdiction to entertain the type of claims asserted by the plaintiffs, the matter of collateral estoppel was still not properly before the court. Our courts have long recognized that the doctrine of res judicata "must be raised as a special defense and may not be raised by a motion to dismiss, which is the appropriate vehicle to assert a lack of jurisdiction." Id., citing *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 686–87, 490 A.2d 509 (1985). Here, the issue of collateral estoppel was raised in the defendants' memorandum of law in support of their motion to dismiss and was, therefore, not properly raised.

constitution of Connecticut. The court determined that as to these claims, Nash was entitled to statutory immunity from suit pursuant to General Statutes § 4-165. We agree.

General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ." Our Supreme Court recently observed that it has "never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165. In the common-law context, however, [the court has] stated: In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must provide, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Martin* v. *Brady,* 261 Conn. 372, 379, 802 A.2d 814 (2002). The trial court determined, and we agree, that although the plaintiffs alleged conduct on the part of Nash that fell within his scope of employment, the allegations did not rise to the level of wanton, reckless or malicious conduct. To the contrary, the actions complained of—the issuance of a notice of violation and the denial of a transshipment permit—are clearly actions within the authority vested in Nash and the department by applicable statutory and regulatory provisions. We accordingly conclude that the court properly dismissed

the claims against Nash in his individual capacity on statutory immunity grounds.

## II

The plaintiffs next claim that the court improperly denied their motion to reconsider the dismissal of their action as against Nash in his individual capacity. We disagree.

"Our standard of review regarding challenges to a trial court's ruling on a motion for reconsideration is abuse of discretion." (Internal quotation marks omitted.) *Sandvig* v. *A. Dubreuil & Sons, Inc.*, 68 Conn. App. 79, 96, 789 A.2d 1012 (2002), appeal dismissed, 270 Conn. 90, 851 A.2d 290 (2004).

On September 2, 2003, the plaintiffs filed a motion to reconsider in which they argued that *Miller* v. *Egan*, supra, 265 Conn. 301, overruled two cases relied on by the trial court in dismissing the claims against Nash in his individual capacity. The plaintiffs asserted in their motion that *Miller* "makes very clear that sovereign immunity would not bar an action against the [d]efendant Nash in his individual capacity. . . . This would permit the court to assert subject matter jurisdiction." This assertion evidences a fundamental misunderstanding of *Miller*, the trial court's ruling on the motion to dismiss and the principles of sovereign immunity, statutory immunity and qualified immunity.

Preceding a discussion of claims asserted against one of the defendants in his individual capacity, the *Miller* court observed as follows: "If the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar those claims." *Miller* v. *Egan*, supra, 265 Conn. 307. It is this language that the plaintiffs claim undermines the court's dismissal of their claims against Nash in his individual capacity.

The plaintiffs do not explain, nor can we fathom, how this language regarding the parameters of *sovereign immunity* applies to undercut the trial court's determination that the claims against Nash in his individual capacity are barred by statutory and qualified immunity. The doctrine of sovereign immunity is applicable only to claims against the state, and the court's statement in *Miller* accurately reflects this principle.

The plaintiffs also assert in their motion for reconsideration that, contrary to the court's determination, they set forth a valid § 1983 claim against Nash in his individual capacity by sufficiently alleging various unconstitutional acts. The plaintiffs offer no support for their conclusory assertion that the court's determination was improper. Instead, they merely rehash arguments that were already made, and rejected, in their opposition to the defendants' motion to dismiss. We accordingly conclude that the court did not abuse its discretion in denying the motion for reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.