DAVID PAGE *v.* STATE MARSHAL COMMISSION
(AC 27578)

McLachlan, Harper and Peters, Js.

Argued February 19—officially released July 1, 2008

*Jerome William Paun,* for the appellant (plaintiff).

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, David Page, appeals from the judgment of the trial court dismissing his action against the defendant, the state marshal commission[1] (commission). The plaintiff claims that the court improperly concluded, on the basis of the doctrine of

---

[1] The state marshal commission was promulgated pursuant to General Statutes § 6-38b, which provides in relevant part: "(a) There is established a State Marshal Commission which shall consist of eight members appointed as follows: (1) The Chief Justice shall appoint one member who shall be a judge of the Superior Court; (2) the speaker of the House of Representatives, the president pro tempore of the Senate, the majority and minority leaders of the House of Representatives and the majority and minority leaders of the Senate shall each appoint one member; and (3) the Governor shall appoint one member who shall serve as chairperson. No member of the commission shall be a state marshal, except that two state marshals appointed by the State Marshals Advisory Board in accordance with section 6-38c shall serve as ex officio, nonvoting members of the commission."

sovereign immunity, that it lacked subject matter jurisdiction to entertain his action. We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, are relevant to the resolution of the plaintiff's appeal. On February 1, 2005, the plaintiff, a state marshal, brought this action against the commission. In his complaint, the plaintiff took issue with a policy of the commission that was implemented in 2001 (policy) and designed to effectuate the efficient processing of domestic violence restraining orders. The policy required state marshals to be present at an assigned courthouse, on a weekly rotational basis, from 12:30 to 1 p.m. and from 4:30 p.m. "until closing, Monday through Friday to meet with the applicant to take possession of the order and to discuss the procedure for serving the order . . . ."[2] The plaintiff alleged that this policy violated both state and federal law. Specifically, the plaintiff sought a declaratory judgment that the commission had "(1) exceeded [its] statutory authority, by implementing a policy that treat[ed] state marshals as state employees, in violation of General Statutes § 6-38a;[3] (2) deprived state marshals of the use of their

[2] The policy effective on July 25, 2001, provides in relevant part: "The timely processing of restraining orders is of great concern to many parties; the applicant, the [s]tate [m]arshal [c]ommission, the [s]tate [m]arshals and the [j]udicial system. To that end it is the policy of the [s]tate [m]arshal [c]ommission that restraining orders will be handled through a statewide system of on-call [s]tate [m]arshals. Every [s]tate [m]arshal who has been appointed and authorized to serve process by the [s]tate [m]arshal [c]ommission will participate in this program."

[3] General Statutes § 6-38a provides: "(a) For the purposes of the general statutes, 'state marshal' means a qualified deputy sheriff incumbent on June 30, 2000, under section 6-38 or appointed pursuant to section 6-38b who shall have authority to provide legal execution and service of process in the counties in this state pursuant to section 6-38 as an independent contractor compensated on a fee for service basis, determined, subject to any minimum rate promulgated by the state, by agreement with an attorney, court or public agency requiring execution or service of process.

"(b) Any state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no

property without due process of the law or just compensation, in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 11, of the constitution of Connecticut; (3) forced state marshals into involuntary servitude without due process of the law in violation of the thirteenth[4] and fourteenth amendments to the United States constitution; and (4) failed to ensure that restraining orders are expeditiously served, in violation of [General Statutes] § 6-38b (g)." Additionally, the plaintiff sought an injunction that directed the commission to cease and desist from further enforcement of the policy. He also sought damages for the time and use of his personal property, such as his car, in complying with this policy.

On June 20, 2005, the commission filed a motion to dismiss the complaint for lack of subject matter jurisdiction. In its supporting memorandum of law, the commission argued that it was protected from suit by the doctrine of sovereign immunity and that no exception to the doctrine was applicable.

On March 27, 2006, the court issued a memorandum of decision, granting the motion to dismiss. The court concluded that it lacked subject matter jurisdiction because of the doctrine of sovereign immunity. The court rejected the plaintiff's argument that his action fell within either one of two exceptions to the sovereign immunity doctrine. This appeal followed.

I

As a threshold matter, the commission asserts that the appeal is moot. The commission posits that the plaintiff is objecting to the policy because it required him physically to report to his assigned court in order to await restraining orders. Yet, as the commission

such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions."

[4] On appeal, the plaintiff has not pursued a thirteenth amendment claim.

points out, this policy was replaced with another policy in 2005 (2005 policy) that no longer requires state marshals in specified jurisdictions to report to court in person. Instead, this new policy requires that the state marshal telephone a designated court representative to determine whether there are restraining orders to be served. The commission claims that in light of the 2005 policy, which it claims is permanent, the plaintiff's claims are moot.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 10, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008).

In the present case, the plaintiff contends that his claims are not moot because the 2005 policy is not a permanent policy. In support of this contention, the plaintiff refers to language in the policy and language in subsequent bulletins referencing the policy that demonstrates that the 2005 policy is subject to change.[5] On

---

[5] For example, the commission's administrative bulletin 06-15 states in relevant part: "I would like to remind you of your responsibilities concerning restraining order duty. In those counties where you are required to appear, you must be prompt. Additionally, in those counties where you are allowed to call-in you must call the clerk['s] office at 12:00 noon and 4:00 [p.m.]—

the basis of two considerations, we conclude that this appeal is not moot. First, the appeal is not moot because the policy is subject to change at the discretion of the commission or the judicial branch. Therefore, an actual controversy still exits. Furthermore, the plaintiff may be able to assert a claim for compensation for the period in which the prior policy was in effect. Second, the main issue is not what specific procedures the commission adopts for the equitable assignment of service of restraining orders, as required by § 6-38b (g), but whether the implementation of any such procedures violates the plaintiff's rights as an independent contractor. Thus, the claim is not moot.

## II

While the dispositive issue on appeal is whether the court properly dismissed the plaintiff's action for lack of subject matter jurisdiction, the plaintiff asserts the following four claims on appeal: the court improperly (1) applied the standard of review for a motion to dismiss declaratory judgment actions, (2) found that he failed to provide a factual basis demonstrating that the commission acted in excess of its authority, (3) found that he failed to allege a deprivation of a constitutional interest and (4) dismissed his claim for equitable relief in quantum meruit.[6]

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . When a

---

not earlier. We have been contacted by court personnel reporting that some marshals are calling an hour or two earlier than required and then are not reachable at the required time. Remember that the *call-in policy can be revoked* by the [j]udicial [b]ranch or the [s]tate [m]arshal [c]ommission should abuses continue." (Emphasis added.)

[6] Because we conclude that the court properly dismissed the plaintiff's action on the basis of the doctrine of sovereign immunity, we need not address the plaintiff's remaining claims.

[trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 750–51, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007).

"[T]he sovereign immunity enjoyed by the state is not absolute. There are exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted.) Id., 720.

## A

The plaintiff first claims that his action falls within the second exception to the doctrine of sovereign immunity because the commission violated his constitutional rights. The plaintiff claims violations of the fifth and fourteenth amendments to the United States constitution[7] and article first, § 11, of the constitution of Connecticut, in that "he is being deprived of his liberty and the unfettered use of his property by a unilaterally imposed [commission] policy in violation of his statutory status as an independent contractor."

The plaintiff asserts that the commission's policy deprives him of his liberty because "[i]t compels his attendance at a courthouse for at least one hour each day he is assigned to be there." He notes that he is not compensated for this time, nor is he compensated for the time he spends going to and leaving from the courthouse. The plaintiff asserts that by commandeering one

---

[7] "The fourteenth amendment to the United States constitution prohibits any state from depriving a person of 'life, liberty or property, without due process of the law . . . .' Article first, § 8, of the constitution of Connecticut contains the same prohibition and is given the same effect as the fourteenth amendment to the federal constitution." *Tuchman* v. *State*, supra, 89 Conn. App. 755.

hour a day during his assigned rotational week, the commission is depriving him of his liberty interest.

While the United States Supreme Court has not precisely defined the liberty interest guaranteed by the fourteenth amendment, "the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." (Internal quotation marks omitted.) *Board of Regents* v. *Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). On its face, the plaintiff's claim does not fall within the concept of "liberty" protected by the constitution.

The plaintiff next claims that his due process rights were violated because he was deprived of his property, specifically, the use of his car, without due process of law. Particularly, he claims that the commission commandeered his car without any reimbursement for expenses.

"Our due process inquiry takes the form of a two part analysis. [W]e must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was [he] due." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 499, 778 A.2d 33 (2001). Accordingly, we first examine whether the plaintiff was deprived of a protected interest. "To have a property interest . . . a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement

to it. . . . Property interests, of course, are not created by the [c]onstitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Citation omitted; internal quotation marks omitted.) Id. "If a claimant does not establish a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude." (Internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 442, 673 A.2d 514 (1996).

In the present case, the court rejected the plaintiff's due process claim, stating: "The policy does not interfere with the plaintiff's ability to serve process as he sees fit as an independent contractor. The policy is an orderly process which ensures that restraining orders are received by marshals in a timely and equitable manner. The policy is an incidental requirement to the privilege of acting as a state marshal similar in kind to the requirement that marshals give receipts, without fee, for all civil process delivered." The plaintiff claims that in arriving at this conclusion, the court erroneously relied on *Tuchman* v. *State*, supra, 89 Conn. App. 745. We disagree with the plaintiff and conclude that the court properly concluded that he was not deprived of a property interest.

In *Tuchman*, the plaintiffs owned a business that transported hazardous waste. Id., 747. The department of environmental protection (department) implemented a regulation that required a permit to transship hazardous waste. Id., 748. Prior to the regulation, the plaintiffs had been shipping hazardous waste and continued to ship it after the regulation was implemented. Id. In 1998, the department issued the plaintiffs a cease and desist notice that they were in violation of the policy and ordered them to stop transshipment of hazardous

wastes. Id. The plaintiffs complied with the order and filed for a permit, which the department denied. Id. The plaintiffs sought declaratory relief against the state and the department, asserting that the defendants violated their rights under the constitution of Connecticut and the United States constitution. Id., 749. The court dismissed the claim for lack of subject matter jurisdiction, and this court affirmed the dismissal. Id.

The court in *Tuchman* concluded that the shipper did not have a protected property interest sufficient to assert a viable due process claim. Id., 756–57. The shipper could not prove that there was a taking of the property because the government was merely regulating the use of the property. Id. Similarly, here, the plaintiff is not deprived of his property because the commission is merely directing and regulating the effective service of restraining orders. The plaintiff's use of his car is an incidental cost for performance of his job as a state marshal.

Nevertheless, the plaintiff argues that his claim is distinguishable from *Tuchman* because he is a duly appointed state marshal and was never ordered to cease and desist from engaging in any prohibited activity. Conversely, the commission argues that *Tuchman* is applicable because the plaintiff does not and cannot show how the state action prevented him from conducting business as a state marshal. The commission argues that the plaintiff is benefiting from the "coveted monopoly status for the legal execution and service of process in the state of Connecticut" because there is a limited number of state marshals in each county. As the commission states: "The plaintiff certainly takes advantage of this benefit and, presumably, acknowledges the authority of the state to confer this benefit upon him. Indeed, the plaintiff does not challenge the 'constitutionality' of this statutory scheme. Nevertheless, the plaintiff apparently asserts that he has a constitutionally protected property interest in avoiding compliance with

a policy promulgated by the same authority for the service of restraining orders." We agree with the commission.

For the foregoing reasons, the court properly determined that the plaintiff's allegations, if proven, failed to demonstrate an incursion on a constitutionally protected interest. See *Barde* v. *Board of Trustees*, 207 Conn. 59, 65–66, 539 A.2d 1000 (1988).

B

The plaintiff next claims that his action falls within the third exception to the doctrine of sovereign immunity, asserting that the commission acted in excess of its statutory authority.[8] Specifically, the plaintiff asserts that the commission has stepped outside the bounds

---

[8] In relation to the third exception, our Supreme Court has stated: "We previously have explained the reasons underlying the exception to the doctrine of sovereign immunity for actions seeking declaratory or injunctive relief against a state officer for conduct in excess of statutory authority. Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. . . . Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003).

Moreover, the *Miller* court rejected the adoption of the case-by-case standard previously articulated in *Shay* v. *Rossi*, 253 Conn. 134, 172, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). The court described the *Shay* standard as "somewhere between . . . two poles, namely, at one pole, the standard for abrogation of judicial immunity, and at the other pole, that a process of statutory interpretation yields a conclusion that the state officials acted beyond their authority." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 326, quoting *Shay* v. *Rossi*, supra, 172. In *Miller*, the court concluded that the restriction of the exception for officials alleged to have acted in excess of their statutory authority to claims for declaratory or injunctive relief rendered it "sufficiently narrow" and eliminated the "danger that the

of the statutory authority provided to it through § 6-38a (a). He states: "To remain within the statutory authority delegated to the [commission], when it fashions a policy to equitably assign restraining orders to state marshals (or any other policy affecting them, for that matter), it must do so within the confines of their statutory status as independent contractors. It cannot implement a policy that treats state marshals as if they were employees or volunteers because under § 6-38a (a) . . . they are not." (Citation omitted.) The plaintiff contends that because state marshals are independent contractors, the commission does not have the power to direct and control how a state marshal performs his or her job. The plaintiff claims that the commission's directive forces him to be at the courthouse when he could be out serving restraining orders or on other assignments.

In opposition, the commission argues that the third exception to the doctrine of sovereign immunity is inapplicable. The commission maintains that pursuant to § 6-38b (g), it is "responsible for the equitable assignment of service of restraining orders to state marshals in each county and [to] ensure that such restraining orders are served expeditiously. . . ." General Statutes § 6-38b (g). In order to carry out this responsibility, the commission under § 6-38b (k) has been granted the power to "adopt such rules as it deems necessary for conduct of its internal affairs . . . ." General Statutes § 6-38b (k). According to the commission, "[t]hese two statutory provisions empower [it] to implement the policy to ensure the expeditious service of restraining orders. It cannot be reasonably argued that by doing so, [it] has acted in excess of its statutory authority."

"For a claim under the third exception, alleging that an officer acted in excess of statutory authority, the

exception will swallow the rule." *Miller* v. *Egan*, supra, 327. Thus, the court concluded that "when a process of statutory interpretation establishes that the state officials acted beyond their authority, sovereign immunity does not bar an action seeking declaratory or injunctive relief." Id.

[plaintiff] must do more than allege that the defendants' conduct was in excess of their statutory authority; [he] also must allege or otherwise establish facts that reasonably support those allegations. . . . In the absence of a proper factual basis in the complaint to support the applicability of [this exception], the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citation omitted; internal quotation marks omitted.) *Tuchman* v. *State*, supra, 89 Conn. App. 754.

In the present case, the court concluded that the commission did not act in excess of its statutory authority. Pursuant to § 6-38b (g), the commission is responsible for the "equitable assignment of service of restraining orders to the state marshals in each county . . . ." General Statutes § 6-38b (g). Section 6-38b (k) provides in relevant part that the "commission may adopt such rules as it deems necessary for conduct of its internal affairs . . . ." General Statutes § 6-38b (k). The court held that "[t]hese two statutory provisions empower the . . . commission to implement the policy, in accordance with the authority granted to it by § 6-38b (k), to aid in the commission's statutory responsibility to ensure the expeditious service of restraining orders." The court concluded "that the plaintiff has not provided a factual basis to support the applicability of this exception." Moreover, the plaintiff's complaint was devoid of any factual allegations that, if proven, reasonably would support his assertion that the commission acted in excess of its statutory authority in implementing the policy. We agree with the court's conclusion.

On the basis of the foregoing, we conclude that because neither of the two exceptions to the doctrine of sovereign immunity asserted by the plaintiff is applicable, the commission is immune from suit. Therefore, the court properly dismissed the plaintiff's claim.

The judgment is affirmed.

In this opinion the other judges concurred.