******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DANIEL HENDERSON ET AL. *v.* STATE
OF CONNECTICUT ET AL.
(AC 34944)

Bear, Keller and Schaller, Js.*

*Argued January 8—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of New
Haven, Blue, J. [motion to cite in]; A. Robinson, J.
[motion to dismiss; judgment].)

*Daniel Henderson*, self-represented, the appellant

(named plaintiff).

*Steven R. Strom*, assistant attorney general, with whom were *Stephen R. Finucane*, certified legal intern, and, on the brief, *George Jepsen*, attorney general, for the appellees (named defendant et al.).

*Opinion*

KELLER, J. The self-represented plaintiff, Daniel Henderson, appeals from the judgment of the trial court dismissing his action against the defendants, the state of Connecticut and Ilana Cathcart, a senior assistant state's attorney.[1] The plaintiff commenced the underlying action, which he frames as a breach of contract claim, seeking declaratory and injunctive relief, including, among other things, an order requiring the defendants to allow an "adult business" to operate at an establishment known as the "2041 Club" in Meriden. On appeal, the plaintiff claims that the court improperly concluded that (1) the state is immune from suit on the basis of the doctrine of sovereign immunity, (2) Cathcart is immune from suit on the basis of the doctrine of absolute prosecutorial immunity, and (3) the action was barred by the prior pending action doctrine. The plaintiff also claims that the court erred when it failed to hold an evidentiary hearing prior to granting the defendants' motion to dismiss. The defendants respond that the court properly dismissed the complaint and that the plaintiff lacked standing to bring the underlying action. We conclude that the entire action is barred by the doctrine of sovereign immunity and, accordingly, we affirm the judgment of the court.[2]

The following facts and procedural history are relevant to this appeal. The plaintiff in this action previously was a defendant in a nuisance abatement action brought by the state on April 30, 2009, relating to an adult business known as the 2041 Club, of which he was one of the primary owners and operators. See *State* v. *Henderson*, 140 Conn. App. 672, 60 A.3d 294 (2013); *State* v. *Henderson*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-09-4011479-S (July 30, 2009). In that action, the state alleged that the 2041 Club was being used for illegal activities, including prostitution, and that it constituted a public nuisance pursuant to General Statutes § 19a-343. On September 10, 2009, the parties resolved the nuisance abatement action through a stipulation for judgment, rendered by the court, *B. Fischer, J.*, in accordance with the parties' written agreement of that date. The stipulated judgment permitted the use of the property under certain stated conditions.

The stipulated judgment provided that "[t]he business known as '2041 Club' located at 2041 North Broad Street, Meriden, Connecticut, shall remain closed and not reopen for business," and that the plaintiff would be barred from "owning, entering onto the subject property or operating any business or profiting from any business in any capacity at 2041 North Broad Street, Meriden, Connecticut." The stipulated judgment also provided the terms by which the property could be conveyed. Specifically, the 2041 Club could be conveyed either by foreclosure or by warranty deed "to a good

faith purchaser for value, in an [arm's-length] transaction, who has been pre-approved by the Division of Criminal Justice." The future purchaser would be required to comply with specific restrictions, to be included in the transferring warranty deed as a restrictive covenant, including the prohibition of installing any partitions that would obstruct visibility into areas where certain specified acts of "adult-oriented entertainment" were to be performed. The stipulated judgment further provided that the Superior Court for the judicial district of New Haven at Meriden "shall retain jurisdiction of this matter for the purpose of enforcing the terms of the Judgment and for addressing any other matters which may arise related to this action." It also provided that the parties would "waive, release, and forever discharge and hold harmless the State of Connecticut and the Office of the Chief State's Attorney, or any agents of the Office of the Chief State's Attorney, from any and all civil and criminal liability whatsoever for any injuries, damages, claims or causes of action whatsoever, whether known or unknown, related to the investigation of illegal activities at the [2041 Club], and the subsequent civil prosecution brought against the Defendants."[3]

The owners and operators of the 2041 Club, including the plaintiff in this action, signed the stipulated judgment, as did Cathcart, who signed on behalf of the state. Neither the city nor any of its representatives was a signatory to the stipulated judgment. On September 10, 2009, in the presence of the plaintiff, Cathcart thoroughly explained the terms of the stipulated judgment before the trial court. When canvassed by the court, the plaintiff stated that he had signed the stipulated judgment, had sufficient time to review it, and fully understood its terms and conditions. When asked whether any part of Cathcart's explanation of the stipulated judgment did not correspond with his understanding of its terms, he replied in the negative. He also declined the opportunity to ask the court any questions about the stipulated judgment.

Although the plaintiff's operative complaint hardly can be characterized as a model of clarity,[4] we accept the undisputed facts pleaded therein as true.[5] The plaintiff appears to frame the underlying action as a breach of contract claim, namely, the defendants' alleged breach of the stipulated judgment and of an additional out-of-court oral agreement he allegedly entered into with Cathcart and Meriden City Attorney Deborah Moore. Specifically, the plaintiff appears to allege that prior to appearing before the court, he and his brother, David Henderson, met privately with Moore and Cathcart. They allegedly represented to the plaintiff that a prospective purchaser of the property would be permitted to open and operate an adult business at 2041 North Broad Street in Meriden, subject only to the restrictions concerning adult oriented entertainment set forth in

the written stipulated judgment, on the condition that they preapproved the prospective purchaser. In support of these allegations, the plaintiff submitted the affidavits of Donna McManus and Lori Touma. Touma attested that on September 10, 2009, the day the court entered the stipulated judgment, she overheard a conversation between the plaintiff, his brother and two unidentified women at a coffee shop at the Meriden Superior Court. She further attested that the conversation revolved around the sale of an adult business, and when the plaintiff asked the women if he could represent that the property and the adult business were for sale, one of the women responded, "yes," so long as they preapproved the purchaser. McManus similarly averred to overhearing a conversation in which Moore stated to the plaintiff that the 2041 Club could be sold as an adult business on the condition that she preapproved the purchaser.

The plaintiff further alleges that, in reliance on the stipulated judgment, the out-of-court oral agreement, and his understanding that "[t]he Agreement was to insure that '2041' would be sold with its 'Adult Usage' and any future owner would maintain that right," he represented to Jess Daenekindt, a potential buyer and coplaintiff in this underlying action, that he "would maintain full rights to [2041 Club's] adult usage," including the right to operate an adult business "under its current zoning classification as a valid 'non-conforming adult use.'" Daenekindt then contacted Moore and Cathcart, and stated his intent to purchase the property and operate an adult business at that location. After an investigation of Daenekindt "by the City of Meriden and/or State of Connecticut, he was approved to purchase and open an adult business at '2041.'" The city then conducted a second investigation of Daenekindt and, again, approved him to purchase the property. Thereafter, on October 16, 2009, Daenekindt purchased the property from the plaintiff under the belief that he would be permitted to operate an adult business at the location.

The plaintiff conveyed the property to Daenekindt by warranty deed, which specified that the property is subject to "[a]ny and all provisions of any municipal ordinance or regulations, and any Federal, State or local public or private laws, with special reference to the provisions of any zoning rules and regulations governing the subject premises." The warranty deed also included a provision requiring the buyer to comply with the restrictions relating to certain specified "adult-oriented entertainment," as required by the stipulated judgment. The plaintiff alleges that after the sale of the property, the defendants declared "2041's valid non-conforming adult usage [to be] illegal," despite Moore's and Cathcart's out-of-court oral agreement that a preapproved purchaser would be permitted to operate an adult business on the premises. As a result of this decla-

ration, Daenekindt withheld payment on the sale of the property and claimed that the plaintiff was liable to him for damages arising from misrepresentations made by the plaintiff regarding the legality of the adult usage of the property.

The plaintiff commenced the underlying breach of contract action through several amended complaints, the first of which was filed on July 30, 2011, and the most recent of which was filed on January 12, 2012. In addition to naming the state as a defendant, the plaintiff's complaint purports to sue Cathcart both individually and in her official capacity. The plaintiff sought, among other things, an order requiring the defendants to allow an adult business to operate at the property and a declaration that the 2041 Club is "vested with a [c]onstitutionally [p]rotected valid non-conforming [a]dult usage right."[6] On November 15, 2011, the defendants filed a motion to dismiss the complaint, accompanied by a memorandum of law in support of their motion. In their motion and supporting memorandum of law, the defendants argued that the plaintiff lacked standing to bring the action because the plaintiff, having conveyed the property by warranty deed to Daenekindt, had no property interest in the 2041 Club, and because the express terms of the stipulated agreement deprived the plaintiff of standing. Additionally, the defendants argued that both the state and Cathcart, whom they maintained was being sued only in her official capacity as a senior assistant state's attorney, were protected from suit by the doctrine of sovereign immunity. The defendants' final claim was that because the conduct giving rise to this action was performed by Cathcart in her official capacity, she was protected from suit under the doctrine of absolute prosecutorial immunity.

The plaintiff requested an evidentiary hearing on the motion to dismiss on December 30, 2011. The court, however, did not rule on the motion, stating that if "testimony or evidence is required, it will be scheduled at the hearing . . . ."

The court held a hearing on the motion to dismiss on June 27, 2012, where the plaintiff represented himself.[7] Following argument, the court granted the defendants' motion without issuing a memorandum of decision and without holding an evidentiary hearing. The court's written order indicates the basis of its decision: "The motion to dismiss of the State of Connecticut and defendant Ilana Cathcart is granted for the following reasons. First, the State of Connecticut is immune from prosecution pursuant to the sovereign immunity doctrine. Second, defendant Cathcart is entitled to immunity under the more limited prosecutorial immunity doctrine because all of her alleged actions arose from her fulfillment of her duty as a State's Attorney for the State of Connecticut. Third, the action is barred by the prior pending action doctrine." On July 25, 2012, pursuant to

Practice Book § 11-11, the plaintiff filed a motion to reargue, which the court subsequently denied. This appeal followed.[8] Additional facts will be set forth as necessary.

I

The plaintiff argues that the court improperly dismissed his claim for breach of contract against the defendants on the ground that the state was immune from suit pursuant to the sovereign immunity doctrine. We disagree and conclude that both the state and Cathcart are entitled to the defense of sovereign immunity.

We begin with the well established standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting grant of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005).

"We have long recognized the common-law principle that the state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer [or agent] concerning a matter in which the officer [or agent] represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. . . . The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Citation omitted; internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 751, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). Likewise, "[t]he doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty." (Internal quotation marks omitted.) *Kenney* v. *Weaving*, 123 Conn. App. 211, 215, 1 A.3d 1083 (2010).

In the present case, the plaintiff, in his complaint, purports to sue Cathcart both in her official capacity and in her individual capacity. The defendants, in contrast, assert that "[t]here is no question here that [Cathcart] was sued in her official capacity only," and therefore is immune from suit. "Whether a particular action is one against the state is not determined solely

by referring to the parties of record. . . . If the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar those claims. . . . To determine whether an action is against the state or against a defendant in his individual capacity, we look to the four criteria established by our Supreme Court in [*Somers* v. *Hill*, 143 Conn. 476, 479, 123 A.2d 468 (1956)] and as explained further in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975). If all four criteria are satisfied, the action is deemed to be against the state and, therefore, is barred. . . . The criteria are: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Citations omitted; internal quotation marks omitted.) *Kenney* v. *Weaving*, supra, 123 Conn. App. 215–16; see also *Sullins* v. *Rodriguez*, 281 Conn. 128, 136, 913 A.2d 415 (2007) ("test set forth in *Spring* . . . is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law").

The first criterion is satisfied because Cathcart is a state official—a fact that is not in dispute. With respect to the second criterion, the action against the defendants stems from the nuisance abatement action in which Cathcart represented the state. The plaintiff alleges, essentially, that Cathcart knew or should have known that, despite the representations she made to the plaintiff, a future owner of the 2041 Club would be precluded from operating an adult business at that location. It is this alleged misrepresentation, delivered in the course of her duties as a senior assistant state's attorney while negotiating a stipulated judgment to thwart criminal activity, that lies at the root of the plaintiff's claim.[9]

The third criterion, which is that the state is the real party in interest, also is satisfied. The damages sought by the plaintiff are premised entirely on injuries alleged to have been caused by Cathcart for performing or not performing acts that are part of her official duties. The plaintiff sought injunctive relief, having unequivocally waived any claim to money damages at the hearing on the motion to dismiss, and, thus, sought only an order that the defendants permit an adult business to operate at the premises in question. See footnote 6 of this opinion. We are unaware how Cathcart, in her individual capacity, could authorize the operation of an adult business in light of the zoning regulations of the city, and accordingly conclude that the state is the real party against whom relief is sought because the authority to regulate adult businesses is vested in governmental entities, not private persons.

Finally, the fourth criterion is met because a judgment against Cathcart, on the basis of allegations in the complaint, would operate to control the activities of the state. See *Miller* v. *Egan*, 265 Conn. 301, 311, 828 A.2d 549 (2003). Any judgment against the defendants would impact the manner in which state officials prosecute public nuisance actions and negotiate stipulated judgments.

In sum, because the criteria in *Spring* are satisfied, we conclude that the plaintiff alleged claims against Cathcart only in her official capacity, and the action against her is, in effect, against the state. This conclusion, however, does not end our inquiry, as it is possible for the plaintiff to avoid the bar of the doctrine of sovereign immunity by demonstrating that a recognized exception to the doctrine applies.

"Exceptions to [the sovereign immunity] doctrine are few and narrowly construed under our jurisprudence. . . . [T]he sovereign immunity enjoyed by the state is not absolute." (Citation omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). Our Supreme Court has held that a plaintiff seeking to overcome the presumption of sovereign immunity must show that "(1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citation omitted.) *Miller* v. *Egan*, supra, 265 Conn. 314; see also *Doe* v. *Heintz*, 204 Conn. 17, 31, 526 A.2d 1318 (1987) ("[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute"). The plaintiff does not argue, nor could he, that the legislature has waived sovereign immunity so as to permit this action against the state to proceed. Instead, because the plaintiff seeks injunctive and declaratory relief—including an order requiring the defendants to allow an "adult business" to operate at the 2041 Club, and a declaration that the property is "vested with a constitutionally protected valid non-conforming adult usage right"—we look to the second recognized exception to sovereign immunity.

"[T]he practical and logical basis of the doctrine [of sovereign immunity] is today recognized to rest . . . on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property. . . . [A]dherence to the doctrine of sovereign immunity does not mean [however] that all suits against government officers, since they are in effect suits against the govern-

ment, must be barred . . . . In those cases in which it is alleged that the defendant officer is proceeding under an unconstitutional statute or in excess of [her] statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. Moreover, the government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute. On the other hand, where no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of [her] statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 212–13, 994 A.2d 106 (2010).

When asserting a claim that a state officer acted in excess of his or her statutory authority, "the [plaintiff] must do more than allege that the defendants' conduct was in excess of their statutory authority; [he] also must allege or otherwise establish facts that reasonably support those allegations. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citation omitted; internal quotation marks omitted.) *Tuchman* v. *State*, supra, 89 Conn. App. 754. The plaintiff's operative complaint is barren of any allegations that the defendants acted in excess of statutory authority. The plaintiff alleges that the state, through Cathcart, made representations to him that a preapproved future purchaser would be permitted to operate the 2041 Club as an "adult business." He further alleges that after the sale of the property, the state, through Cathcart, breached this agreement. The plaintiff's complaint, however, is devoid of any factual allegations that, if proven, reasonably would support the conclusion that Cathcart acted in excess of her statutory authority by failing to authorize the operation of an adult business at the 2041 Club. Indeed, we are unaware of what statutory authority *would* permit Cathcart, in her capacity as senior assistant state's attorney, to authorize the operation of an adult business in light of the zoning regulations of the city.

Further, the plaintiff's allegations have not cited any statutory authority that controls or limits the conduct which he alleged to have occurred. Nor did the plaintiff allege that Cathcart was acting pursuant to an unconstitutional statute, or that she failed to act as mandated by any particular statute. Although the plaintiff's complaint appears to make broad allegations that the defendants' conduct violated his right to due process and equal protection, guaranteed by, respectively, article first, § 8, and article first, § 20, as amended by articles five and twenty-one of the amendments to the constitution of

Connecticut, he failed to allege, either in his complaint or in his appellate brief, that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute.

Although in reviewing a motion to dismiss we must construe the allegations of the complaint in the light most favorable to the plaintiff, to survive the defense of sovereign immunity the complaint must nevertheless allege sufficient facts to support a finding of unconstitutional or extrastatutory state action. "In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 350. On the basis of the foregoing, we conclude that the plaintiff failed to plead sufficiently that the state, as represented by Cathcart in her official capacity, acted in excess of statutory authority or pursuant to an unconstitutional statute. Accordingly, we conclude that the court properly granted the defendants' motion to dismiss on the ground of sovereign immunity.

## II

The plaintiff also claims that the court improperly failed to hold an evidentiary hearing prior to dismissing the action, thereby denying him due process of law. This claim is inadequately briefed, and accordingly, we decline to afford it review.

"Although we are solicitous of the rights of [self-represented] litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . [W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . As this court has observed, [a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Citation omitted; internal quotation marks omitted.) *Lynn* v. *Lynn*, 145 Conn. App. 33, 38, 74 A.3d 506 (2013).

The portion of the plaintiff's brief devoted to the need for an evidentiary hearing consists of four sentences, summarily stating that he was "entitled to" an evidentiary hearing and making the broad assertion that the court should have permitted him the opportunity to present witnesses to testify before dismissing his action. He has not, however, provided any legal analysis in support of his claim or identified any disputed questions of fact that could have warranted an evidentiary hearing before the court's decision to grant the defendants' motion to dismiss. See *Countrywide Home Loans Servicing, LP* v. *Creed*, 145 Conn. App. 38, 47,

75 A.3d 38 ("where a jurisdictional determination is not dependent on the resolution of a meaningful factual dispute, there is no requirement that the court conduct a fact-based hearing"), cert. denied, 310 Conn. 936, 79 A.3d 889 (2013). On the basis of the plaintiff's inadequate briefing of the issue, we deem this claim abandoned and decline to afford it review.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Daniel Henderson's brother, David Henderson, and Jess Daenekindt were coplaintiffs in the underlying action, but are not parties to this appeal. Accordingly, all references to the plaintiff throughout this opinion are to Daniel Henderson. The operative complaint—the third amended complaint dated January 12, 2012—also named the city of Meriden and City Attorney Deborah Moore as defendants. The judgment from which the plaintiff appeals was rendered solely in favor of the state and Cathcart. Because they are the only defendants involved in this appeal, we therefore refer to them as the defendants.

[2] In light of our dispositive conclusion that the claims against both the state and Cathcart are barred by the doctrine of sovereign immunity, we need not address the remaining claims concerning standing, prosecutorial immunity, or the prior pending action doctrine.

[3] The stipulated judgment also included a provision that stated: "In the event that a term or terms of this Stipulation conflict with current or future statutes, ordinances, zoning and licensing laws of the State of Connecticut and/or the City of Meriden, the conflicting term or terms shall be superseded by that statute, ordinance, zoning or licensing law." This provision, however, was crossed out in the signed copy of the stipulated judgment.

[4] For example, the complaint contains a "First Cause of Action," apparently directed against all of the defendants, and a "Second Cause of Action," apparently directed solely against Cathcart. The "First Cause of Action" alleges violations of due process, equal protection, and "DEPRIVATION and/ or INJURY done to each separate Plaintiff, in their person, property, and or property rights . . . ." It then, under the subtitle "torts," lists the following counts: (1) breach of contract; (2) breach of fiduciary duty; (3) legal malpractice; (4) illegal confiscation of property; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) intentional interference with a beneficial contractual relationship; (8) negligent interference with a beneficial contractual relationship; (9) fraudulent misrepresentation; (10) intentional concealment of facts; and (11) violation of equal rights and privileges pursuant to General Statutes § 52-571a. The "Second Cause of Action" alleges that Cathcart is liable to him because she "violate[d] clearly established statutory, Common-Law, and/or Constitutional Rights," including those set forth in the "First Cause of Action."

[5] "Because we review the trial court's decision to grant a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . [A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Citation omitted; internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 108–109, 967 A.2d 495 (2009).

[6] Originally, the plaintiff also sought money damages. He unequivocally waived any such claim, however, at the hearing on the motion to dismiss.

[7] Although not raised in the motion to dismiss, the assistant attorney general argued at the hearing that the court lacked jurisdiction over the state due to improper service of process because the plaintiff, having only served Cathcart at the Office of the Chief State's Attorney in Rocky Hill, failed to comply with the requirements of General Statutes § 52-64. The court did not rule on this issue and it is not at issue on appeal.

Additionally, the issue of whether the plaintiff's action was barred by the prior pending action doctrine was addressed at the hearing on the motion to dismiss, although it was not raised in the defendants' memorandum of law. At the hearing, the plaintiff himself first raised the prior pending action doctrine in reference to an action in the judicial district of New Haven at

Meriden. In that action, the plaintiff had filed a motion to enforce the stipulated judgment against the city. See *State* v. *Henderson*, supra, 140 Conn. App. 675–76. On July 14, 2011, the court denied the motion without a written decision, noting only that the plaintiff "had no standing to pursue such a motion . . . ." Id., 675. The plaintiff subsequently appealed to this court, but at the time of the hearing on the defendants' motion to dismiss, this court had not yet rendered a decision on the appeal. This court ultimately upheld the denial of the motion, noting that "[t]he record does not substantiate the defendant's present allegation that the city was in any way bound by the terms of the stipulated judgment between the state and [Daniel Henderson and David Henderson]." Id. This court also noted that the city did not formally appear at the hearing at which the stipulated judgment was entered, there was no reference to the city in the transcript of that hearing, and the judge at the hearing "meticulously canvassed the parties that had agreed to be bound by the stipulated judgment," but never canvassed the city. Id., 676.

[8] The plaintiff withdrew the remaining action against the city and Moore on March 11, 2013.

[9] The plaintiff, in passing, argues that the actual breach of the stipulated judgment and out-of-court oral agreement occurred several months after the close of the nuisance abatement proceedings and the alleged breach was not related to a pending action. As such, he maintains that Cathcart acted beyond the scope of her official duties and, consequently, she was not acting on behalf of the state. This argument is limited to two sentences in his brief, unaccompanied by citation to relevant authority, analysis, or requisite findings in the record, as the court never was asked to make any such findings.