AARON STUART *v*. COMMISSIONER
OF CORRECTION
(SC 16914)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued March 18—officially released November 18, 2003

*Todd A. Edgington*, assistant public defender, for the appellant (petitioner).

*Richard T. Biggar*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

PALMER, J. The petitioner, Aaron Stuart, who is serving a fourteen year term of imprisonment for first degree assault, appeals[1] from the judgment of the trial court dismissing his petition for a writ of habeas corpus. The sole issue on appeal is whether the equal protection clause of the fourteenth amendment to the United States constitution[2] requires that the petitioner be awarded presentence confinement credit pursuant to

---

[1] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

General Statutes (Rev. to 1993) § 18-98d[3] for the period of time that he was incarcerated in Pennsylvania in connection with the assault charge, unable to post bond due to indigency, while contesting extradition to this state. We conclude that the equal protection clause does not entitle the petitioner to such credit.

The following undisputed facts are relevant to this appeal. On April 13, 1993, the petitioner was charged, in the judicial district of Fairfield, with assault in the first degree in violation of General Statutes (Rev. to

[3] General Statutes (Rev. to 1993) § 18-98d provides: "(a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine each day spent in such confinement prior to sentencing shall be credited against the sentence at the rate of ten dollars.

"(b) In addition to any reduction allowed under subsection (a), if such person obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The commissioner of correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) in excess of the sentence actually imposed."

All references to § 18-98d in this opinion are to the 1993 revision unless otherwise stated.

1993) § 53a-59 (a) and attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a). On April 16, 1993, the petitioner was arrested in connection with those charges in Philadelphia, Pennsylvania, and held as a fugitive pursuant to an arrest warrant issued by a judge of this state. Pennsylvania authorities set bond at one million dollars. The petitioner, who was indigent, was unable to post bond. The petitioner thereafter filed a petition for a writ of habeas corpus in a Pennsylvania court, contesting this state's efforts to extradite him. Following a hearing, the court rejected the petitioner's habeas claims and ordered that he be extradited in accordance with this state's request.

On August 23, 1993, the petitioner was transferred to the custody of Connecticut authorities and arraigned. The petitioner thereafter entered a plea of guilty to the charge of assault in the first degree[4] and was sentenced to a term of fourteen years imprisonment. Following the imposition of sentence, the petitioner sought day-for-day credit toward his sentence, under § 18-98d (a), for the 128 days[5] that he had been incarcerated in Pennsylvania while contesting extradition to this state. The respondent, the commissioner of correction (commissioner), denied the petitioner's request.

The petitioner subsequently filed a petition for a writ of habeas corpus in the Superior Court, claiming that he is entitled to credit toward his sentence, under § 18-98d (a), for the period of his confinement in Pennsylvania. The petitioner contended, inter alia, that the denial of such credit constituted discrimination on the basis of indigency in violation of his rights under the equal protection clause. The habeas court did not expressly

---

[4] Pursuant to a plea agreement between the state and the petitioner, the state did not pursue the attempted murder charge further.

[5] This 128 day period runs from April 16, 1993, the first day that the petitioner was confined in Pennsylvania, to August 22, 1993, the day before he was transferred to the custody of Connecticut authorities.

address the petitioner's constitutional claim but, rather, concluded that the petitioner was not entitled to the credit that he sought because § 18-98d applies only to pretrial detainees who are confined in a Connecticut correctional facility, and not to persons who are confined in a facility in another state while contesting extradition to this state. The habeas court therefore dismissed the petitioner's habeas petition. This appeal followed.[6]

On appeal,[7] the petitioner renews his claim that his equal protection rights were violated when the commissioner declined to award him presentence confinement credit under § 18-98d (a) for the 128 days that he had been confined in Pennsylvania prior to his extradition to this state.[8] The petitioner's claim is predicated on the fact that the denial of such credit will cause him to serve 128 days more than a person who also receives a fourteen year sentence but who is entitled to presentence confinement credit under § 18-98d because he had been detained in this state before trial. Although

[6] The petitioner also claimed that he was entitled to presentence good conduct credit under § 18-98d (b); see footnote 3 of this opinion; for the period of his confinement in Pennsylvania. The habeas court rejected this claim as well, concluding that § 18-98d did not apply to persons confined in an out-of-state facility while contesting extradition. Although he initially raised this claim on appeal, he thereafter withdrew it at oral argument before this court.

[7] Although, as we have indicated, the habeas court did not expressly address the petitioner's equal protection claim in its memorandum of decision, the commissioner does not contend that the record is inadequate for our review of that claim. See, e.g., Ammirata v. Zoning Board of Appeals, 264 Conn. 737, 745, 826 A.2d 170 (2003) (record adequate for appellate review when facts are undisputed and issue on appeal is purely one of law).

[8] The petitioner also claims a violation of equal protection under article first, § 20, of the Connecticut constitution. He has failed to explain, however, why the state constitution entitles him to any greater protection than the analogous provision of the federal constitution. Thus, for purposes of this appeal, "we treat [the two] provisions as embodying the same level of protection." Lash v. Aetna Casualty & Surety Co., 236 Conn. 318, 330 n.16, 673 A.2d 84 (1996).

the petitioner acknowledges our recent holding in *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 861–73, 792 A.2d 774 (2002), that § 18-98d, by its terms, is inapplicable to persons confined in another state while contesting extradition,[9] he nevertheless claims that he is entitled to presentence confinement credit under § 18-98d for the period of his confinement in Pennsylvania because the denial of such credit in light of his inability to post bond in Pennsylvania constitutes impermissible discrimination on the basis of indigency. The petitioner's claim that § 18-98d is unconstitutional founders on our threshold determination that the equal protection clause is not implicated in the circumstances presented because persons, such as the petitioner, who are confined in another state pending extradition, are not similarly situated to persons who are confined in this state pending trial.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike." (Internal quotation marks omitted.) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 670–71, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001). Conversely, the equal protection clause places no restrictions on the state's authority to treat dissimilar persons in a dissimilar manner. See, e.g., *State* v. *Gibbs*,

---

[9] The petitioner nonetheless urges us to construe § 18-98d to authorize credit for the time that he was confined in Pennsylvania, notwithstanding our holding in *Hammond*, because, according to the petitioner, a contrary interpretation would render the statute unconstitutionally discriminatory on the basis of indigency. As we have indicated, however, this claim is foreclosed by our decision in *Hammond*, in which we concluded that § 18-98d was not intended to, and does not, apply to persons confined in another state while contesting extradition to this state. *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 861–73. We therefore treat the petitioner's claim as challenging the constitutionality of § 18-98d as applied to him.

254 Conn. 578, 599–600, 758 A.2d 327 (2000); *State* v. *Jason B.*, 248 Conn. 543, 560, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). Thus, "[t]o implicate the equal protection [clause] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . [Consequently], the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons [purporting to be] similarly situated."[10] (Internal quotation marks omitted.) *City Recycling, Inc.* v. *State*, 257 Conn. 429, 448, 778 A.2d 77 (2001); see also *State* v. *Angel C.*, 245 Conn. 93, 126, 715 A.2d 652 (1998) (to prevail on equal protection claim, complainant "must show, as a threshold matter, that [the statute] . . . treats similarly situated individuals differently"). "The similarly situated inquiry focuses on whether the [petitioner is] similarly situated to another group for purposes of the challenged government action." *Klinger* v. *Dept. of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185, 115 S. Ct. 1177, 130 L. Ed. 2d 1130 (1995). Thus, "[t]his initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." (Internal quotation marks omitted.) *Cooley* v. *Superior Court*, 29 Cal. 4th 228, 253, 57 P.3d 654, 127 Cal. Rptr. 2d 177 (2002).

Upon application of these principles, we conclude that the petitioner's claim does not implicate the equal protection clause because the class of persons confined in another state during the pendency of extradition proceedings is not similarly situated to the class of

---

[10] Thus, it is only after this threshold requirement is met that the court will consider whether the statute survives scrutiny under the equal protection clause. E.g., *State* v. *Angel C.*, 245 Conn. 93, 126 n.37, 715 A.2d 652 (1998).

persons confined in this state while awaiting trial.[11] It is true, of course, that members of both classes have been arrested for crimes committed in this state and have been confined in lieu of bond. The similarities between the two classes end there, however. The differences, we conclude, are overriding for purposes of equal protection analysis.

These differences all relate to the fact that an extraditee, in contrast to a person who is confined in this state, has voluntarily chosen to leave the state.[12] Indeed, we do not doubt that, in the great majority of such cases, the extraditee will have fled the state for the

[11] As we previously have noted, we addressed a claim similar to the one presented by this appeal in *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 855. In *Hammond*, the petitioner, Martin Hammond, claimed that, because persons arrested and confined in this state prior to trial are entitled to presentence credit under § 18-98d, the equal protection clause required that he also be awarded such credit for the time that he was confined in Massachusetts while contesting extradition to this state. See id., 877 and n.22. Upon rejecting Hammond's contention that the commissioner's denial of presentence confinement and good conduct credit for his period of confinement in Massachusetts implicated a fundamental right; id., 879–80, 882, 883; we concluded that the classification did not violate the equal protection clause because it is reasonably related to a legitimate state interest. Id., 887. In contrast to the petitioner in the present case, however, Hammond did not establish that his failure to obtain release from confinement while contesting extradition was the result of indigency and, consequently, we did not address that claim. Id., 869 n.14. Furthermore, for purposes of our equal protection analysis in *Hammond*, we assumed without deciding that persons arrested and confined in another state while contesting extradition to this state are similarly situated to persons arrested and detained in this state while awaiting trial. Id., 877 n.22. In the present case, we decide the latter issue and conclude that persons who are confined in another state pending extradition to this state are not similarly situated to pretrial detainees who are confined in this state pending trial.

[12] A person seeking presentence confinement credit for the time that he or she was confined in another state while contesting extradition to this state necessarily has been convicted of and sentenced for criminal conduct that formed the basis for the state's extradition request. Needless to say, an extraditee who is not ultimately convicted for the commission of any such conduct will have no sentence against which to apply presentence confinement credit.

purpose of avoiding apprehension by authorities. In any event, an extraditee's confinement in another state results solely from the extraditee's own decision to leave the state. Consequently, any delay associated with the extradition process stems from the extraditee's decision to leave the state after having engaged in the criminal conduct that prompted the extradition request. Thus, the petitioner faced extradition only because he chose to travel to Pennsylvania sometime after he had committed the assault that led to his conviction in this state.

Moreover, an extraditee has complete control over how much time he or she will spend confined in an out-of-state facility. In other words, although a person arrested in another state for a crime committed in this state has a right to challenge this state's efforts to extradite him, that person also has a corresponding right to waive an extradition hearing and to be returned immediately to this state.[13] In the present case, if the petitioner had chosen not to challenge the state's efforts to extradite him, the time that he would have spent confined in Pennsylvania would have been minimal. Thus, although an extraditee cannot control the length of time that a contested extradition proceeding will take, the extraditee may elect to avoid such a proceeding altogether.

Finally, this state has no jurisdiction over a person arrested in another state on a fugitive warrant for crimes committed in this state. Consequently, this state cannot

---

[13] We note that "an extradition hearing, which takes place before the start of formal adversarial judicial proceedings . . . is only a summary proceeding, limited to [a determination of] whether the necessary documents are in order, whether the petitioner has been charged with a crime, is the person named in the extradition request and is a fugitive from justice." (Citation omitted; internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction,* supra, 259 Conn. 884. Thus, the rights that one forgoes by waiving an extradition hearing are very limited in nature.

commence formal judicial proceedings against that person unless and until he is extradited to this state. By contrast, a person confined in this state pending disposition of a criminal case is subject to this state's legal process and, therefore, to any and all proceedings related to the charges that have been filed against him.[14] In addition, a judicial officer in the asylum state will determine whether bail is necessary and, if so, in what amount. Thus, unlike in the situation involving a person who is arrested and confined in Connecticut for crimes committed therein, this state does not control whether the extraditee will be released or confined during the pendency of the extradition proceedings. Furthermore, bail will be set in the asylum state with due consideration of the fact that the extraditee is a fugitive. Indeed, the extraditee's flight from this state frequently will be the most important factor in the determination of bail. Thus, an extraditee's decision to leave, rather than remain in, this state is more likely to result in confinement.

It cannot be disputed that the class of persons who are confined in another state while contesting extradition and the class of persons who are held in this state pending trial share a common characteristic, namely, that they have been confined in connection with criminal charges pending in this state. Notwithstanding this similarity, we are persuaded that the relevant differ-

[14] Moreover, due to the fundamental differences between extradition proceedings, on the one hand, and pretrial proceedings and trials, on the other, persons confined in this state prior to trial have numerous substantive and procedural rights that are not afforded to persons contesting extradition. The existence of these differing rights militates against the petitioner's claim that persons confined in another state while contesting extradition are similarly situated to pretrial detainees confined in this state while awaiting trial. See, e.g., *Jankowski-Burczyk* v. *Immigration & Naturalization Service*, 291 F.3d 172, 176 (2d Cir. 2002) (that availability of rights turns on distinction between two classes supports contention that those classes are not similarly situated for equal protection purposes).

ences between the two groups are so significant that the petitioner cannot make the threshold showing necessary to pursue his equal protection claim, namely, that those groups are sufficiently similarly situated to one another in all relevant aspects to require the state to justify the challenged classification. We therefore reject the petitioner's claim that the commissioner's denial of presentence confinement credit under § 18-98d for the time that the petitioner had been confined in Pennsylvania while contesting extradition to this state amounted to a violation of the equal protection clause of the fourteenth amendment.

The judgment is affirmed.

In this opinion the other justices concurred.