******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JADIEL B.*
## (AC 47325)

Elgo, Clark and Westbrook, Js.

### Syllabus

The respondent father appealed from the judgment of the trial court terminating his parental rights with respect to his minor child, J, who had previously been adjudicated neglected and committed to the care and custody of the petitioner, the Commissioner of Children and Families. The father claimed, inter alia, that the trial court erred in determining, pursuant to statute (§ 17a-112 (j)), that he was unable or unwilling to benefit from the efforts of the Department of Children and Families to reunify him with J. *Held*:

The trial court's determination, pursuant to § 17a-112 (j) (1), that the father was unable or unwilling to benefit from the department's reunification efforts was not clearly erroneous.

The record was inadequate to review the father's unpreserved claim that the department's failure to provide him with services during his period of incarceration violated his right to equal protection guaranteed under the federal and state constitutions.

Argued May 16—officially released September 25, 2024**

### Procedural History

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters at Bridgeport, and tried to the court, *McLaughlin, J.*; judgment terminating the respondents' parent rights, from which the respondent father appealed to this court. *Affirmed*.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** September 25, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent father).

*Michael Rondon*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ELGO, J. The respondent father, Joel B.-R., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his minor child, Jadiel B. (Jadiel).[1] On appeal, the respondent claims that the trial court erred in determining that (1) the Department of Children and Families (department) had made reasonable efforts to reunify the respondent with Jadiel and (2) the respondent was unable or unwilling to benefit from services. The respondent also contends that General Statutes § 17a-112, as applied, violates the equal protection clauses of the federal and state constitutions. We affirm the judgment of the court.

The following undisputed relevant facts, which the court found by clear and convincing evidence, and procedural history are relevant to this appeal.[2] Jadiel was

---

[1] The court also terminated the parental rights of Heather M., the respondent mother of Jadiel. She has not appealed from the termination of her parental rights. All references in this opinion to the respondent are to Joel B.-R. only.

[2] In addition to setting forth its findings of fact in its memorandum of decision, the court stated that it took judicial notice of the trial court file, specifically, "[the] prior court's ruling in this case including the neglect adjudication, any orders relating to an [order of temporary custody], and then, the [permanency] plan, and, certainly, the petition in this case." Additionally, the court admitted nineteen exhibits into evidence. With the exception of exhibit R, the respondent's criminal conviction certification record, all exhibits were entered as full exhibits upon the agreement of the parties. The court overruled the respondent's objection to the admission of exhibit R, and it was also admitted as a full exhibit.

born in August, 2020. On August 7, 2020, the petitioner filed a neglect petition and a petition for an ex parte order of temporary custody on behalf of Jadiel. The court granted the ex parte order of temporary custody and, on August 17, 2020, sustained the order of temporary custody, vesting temporary custody of Jadiel with the petitioner. On May 20, 2021, the court adjudicated Jadiel neglected and committed him to the care and custody of the petitioner. The court ordered final specific steps for the respondent at the time of the neglect adjudication. On October 5, 2021, the court approved the permanency plan of termination of parental rights and adoption for Jadiel.[3]

On January 24, 2022, the petitioner filed a petition to terminate the respondent's parental rights, which was predicated on the respondent's failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B). In the petition, the petitioner alleged, inter alia, that the department had made reasonable efforts at reunification, that the respondent was unable or unwilling to benefit from reunification efforts, and that reasonable efforts were not required because the trial court already had approved a plan other than reunification. On February 8, 2022, the court adjudicated the respondent to be the biological father of Jadiel. A trial on the petition to terminate the respondent's parental rights commenced on October 19, 2023, and concluded on October 26, 2023.

In its memorandum of decision dated December 4, 2023, the court set forth the following facts that are relevant to the disposition of this appeal. "At birth, [Jadiel] tested positive for cocaine. The mother also tested positive for cocaine. When [Jadiel] was born, he had difficulty breathing and was placed on a [Continuous Positive Airway Pressure (CPAP) machine]. The

_____

[3] On August 9, 2022, and June 6, 2023, the court also approved a permanency plan of termination of parental rights and adoption for Jadiel.

hospital transferred [Jadiel] to the Neonatal Intensive Care Unit (NICU) for observation and for possible treatment for withdrawal. Due to [Jadiel] and the mother testing positive for cocaine, the hospital social worker contacted the department. In response, the [petitioner] filed the [petition for an ex parte order of temporary custody].

The court found that Jadiel has been in the care and custody of the petitioner since the granting of the order of temporary custody in August, 2020, and has resided with the same foster family since that time. The court further found that "[t]he foster family consists of a foster mother and foster sister. The foster mother also has three adult children. The family provides [Jadiel] with a loving and supportive home. [Jadiel] calls the foster mother 'mommy' and the foster sister 'sissy.' " The foster mother ensures that [Jadiel] is well cared for medically and educationally. [Jadiel] attends pre-kindergarten. His school social worker reports that he is doing 'phenomenal' and is 'super social and outgoing.' [Jadiel] is happy and developmentally on target."

The court found that "[t]he [respondent] is thirty-six years old. He has a long history of substance abuse and mental health issues and criminal activity. The [respondent's] substance abuse issues include the use and abuse of cocaine, alcohol, and marijuana.

"When [Jadiel] was a month old, the [respondent] was incarcerated on charges of robbery in the second degree and assault in the second degree. He was released from prison on February 9, 2023. While incarcerated, the department could not provide the [respondent] with any services. Only the [Department of Correction] can provide programs to incarcerated individuals. During his incarceration, the [respondent] did not complete any programs or treatment for substance abuse or mental health issues. He also did not complete any parenting programs."

The court further found that, upon the respondent's release from prison, he failed to obtain consistent employment or housing, only sporadically attended substance abuse and mental health treatment programs, and continued to test positive for cocaine, marijuana, opiates, and alcohol. The court noted that, on September 6, 2023, the respondent was arrested again as a result of an incident that occurred on June 16, 2023. As of the date of the termination of parental rights trial, the respondent was incarcerated on pending charges of assault in the second degree, robbery in the third degree, larceny in the second degree, breach of the peace in the second degree, interfering with an officer, violation of probation, and attempt to commit robbery in the second degree.

The court thereafter found, by clear and convincing evidence, that (1) the department had made reasonable efforts to reunify the respondent and Jadiel,[4] and that the respondent was unable or unwilling to benefit from those efforts, (2) the respondent had failed to rehabilitate, and (3) termination of parental rights was in Jadiel's best interest. Accordingly, the court granted the petitioner's petition for termination of the respondent's parental rights. The respondent then filed the present appeal.[5]

Before addressing the respondent's claims on appeal, we briefly set forth the legal principles that govern our review. "Proceedings to terminate parental rights are governed by . . . § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the

---

[4] The court noted that the respondent's location was never an issue and that he appeared with appointed counsel at trial.

[5] Pursuant to Practice Book §§ 67-13 and 79a-6 (c), the attorney for the minor child filed a statement adopting the brief of the petitioner and supporting the affirmation of the judgment terminating the respondent's parental rights.

dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. . . . Also, as part of the adjudicatory phase, the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . ." (Citation omitted; internal quotation marks omitted.) *In re Malachi E.*, 188 Conn. App. 426, 434, 204 A.3d 810 (2019).

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child." (Citation omitted; internal quotation marks omitted.) Id.

I

The respondent first challenges the court's findings, made pursuant to § 17a-112 (j) (1), that the department had made reasonable efforts to reunify him with Jadiel and that he was unable or unwilling to benefit from such efforts.[6] Specifically, he contends that the department did not provide the respondent with any rehabilitative services prior to the filing of the petition for termination of parental rights on January 24, 2022, because

---

[6] The respondent also challenges the constitutionality of General Statutes §§ 17a-111b (a) (2) and 17a-112 (j). Specifically, he contends that the statutory interplay between these sections "allows for an impermissible end run around the clear and convincing evidentiary standard required, as a matter of due process, in all termination hearings." According to the respondent,

he was incarcerated. He further contends that the court improperly considered efforts made by the department after the filing of the termination petition within its reasonable efforts determination. We conclude that the court properly determined that the respondent was unable or unwilling to benefit from reunification services and, therefore, need not address the respondent's claim that the department failed to make reasonable efforts to reunify the respondent and Jadiel.

The following legal principles and standard of review are relevant to our resolution of this issue. "[Section] 17a-112 (j) (1) requires that before terminating parental rights, the court must find by clear and convincing evidence that the department has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate . . . . Thus, the department may meet its burden concerning reunification in

"the statutory scheme requires the department to prove it made reasonable efforts to reunify the respondent with his child by clear and convincing evidence unless the court has approved a permanency plan other than reunification. But at the permanency plan hearing, the department is merely required to satisfy its burden, including that it has made reasonable efforts to reunify the parent with the child . . . by a mere preponderance of the evidence."

In the present case, because the court expressly found, on the basis of clear and convincing evidence, that the respondent was unwilling and unable to benefit from reunification efforts, and we affirm those findings, we need not address the respondent's constitutional claims. See *In re Kyreese L.*, 220 Conn. App. 705, 714–15 n.6, 299 A.3d 296 (declining to review constitutional challenge to statutory scheme because court found, on basis of clear and convincing evidence, that department made reasonable efforts to reunify parent and child), cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023); *In re Timothy B.*, 219 Conn. App. 823, 828 n.5, 296 A.3d 342 ("[a]s a jurisprudential matter, Connecticut courts follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions" (internal quotation marks omitted)), cert. denied, 349 Conn. 919, 318 A.3d 439 (2023).

one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate." (Internal quotation marks omitted.) *In re Timothy B.*, 219 Conn. App. 823, 827–28, 296 A.3d 342, cert. denied, 349 Conn. 919, 318 A.3d 439 (2023).

"[I]n evaluating a trial court's ultimate finding that the respondent was unable or unwilling to benefit from rehabilitation efforts for evidentiary sufficiency, we ask whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in the light most favorable to sustaining the judgment of the trial court. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Cameron W.*, 194 Conn. App. 633, 667–68, 221 A.3d 885 (2019), cert. denied, 334 Conn. 918, 222 A.3d 103 (2020). Furthermore, in reviewing this claim we note that "an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding. . . . Furthermore, [w]e read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Citation omitted; internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012).

The crux of the respondent's claim is that, because incarceration alone cannot be the basis to terminate his parental rights, and because the department failed to facilitate his reunification with Jadiel based entirely on his incarceration, the court erred in terminating his

parental rights. In considering this claim, we note "the reality . . . that incarceration imposes limitations on what the department and its social workers can do and what services it can provide for an incarcerated parent facing termination of his or her parental rights. . . . The reasonableness of the department's efforts must be viewed in the context of these limitations." (Citation omitted; internal quotation marks omitted.) *In re Karter F.*, 207 Conn. App. 1, 15–16, 262 A.3d 195, cert. denied, 339 Conn. 912, 261 A.3d 745 (2021); see also *In re Katia M.*, 124 Conn. App. 650, 661, 6 A.3d 86 ("[a]lthough we agree that incarceration alone is not a sufficient basis to terminate parental rights . . . incarceration none- theless may prove an obstacle to reunification due to the parent's unavailability" (citation omitted)), cert. denied, 299 Conn. 920, 10 A.3d 1051 (2010); *In re Emily S.*, 210 Conn. App. 581, 610, 270 A.3d 797 ("[T]he fact of incarceration, in and of itself, cannot be the basis for a termination of parental rights. . . . At the same time, a court properly may take into consideration the inevita- ble effects of incarceration on an individual's ability to assume his or her role as a parent. . . . Extended incarceration severely hinders the department's ability to offer services and the parent's ability to make and demonstrate the changes that would enable reunifica- tion of the family." (Internal quotation marks omitted.)), cert. denied, 342 Conn. 911, 271 A.3d 1039 (2022).

In *In re Karter F.*, supra, 207 Conn. App. 17–18, the respondent argued that the trial court improperly had found that he was unable or unwilling to benefit from reunification services because he was incarcerated. Reading the trial court's decision as a whole, however, this court determined that the respondent's incarcera- tion was not the sole basis for the court's finding that he was unable to benefit from the department's reunifi- cation efforts. Id., 18–19. The court's memorandum of decision and the record, rather, "[revealed] that the

court made ample relevant factual findings concerning the respondent's unresolved mental and emotional issues and his failure to take advantage of the opportunities that the department offered him to treat those issues or to bond with the child during his incarceration." Id., 19. Similarly, in the present case, our review of the court's memorandum of decision and the record reveals that the court did not base its conclusion that the respondent was unable or unwilling to benefit from reunification services solely on the fact that the respondent was incarcerated. Rather, the court found, with ample support in the record, that the respondent was unable or unwilling to benefit from the department's reunification efforts that were offered both prior to the respondent's incarceration as well as during his incarceration.[7]

As set forth previously in this opinion, on August 17, 2020, the court sustained the order of temporary custody, vesting temporary custody of the child with the petitioner. The court noted in its memorandum of decision that it ordered preliminary specific steps in August, 2020, when it sustained the order of temporary custody, and that these same specific steps were ordered as final specific steps at the time of the adjudication of neglect on May 20, 2021.[8] The specific steps required, inter alia, that the respondent (1) "[k]eep all appointments set by or with [the department]," (2) "[s]ubmit to a substance abuse evaluation and follow the recommendations about treatment, including, inpatient treatment if necessary, aftercare and relapse prevention," (3) "[n]ot use illegal drugs or abuse alcohol or medicine," (4) "[n]ot get involved with the criminal

[7] In light of this conclusion, we need not address the petitioner's contention that the trial court was entitled to base its "unable or unwilling" determination solely on the respondent's incarceration.

[8] The respondent signed the specific steps on April 16, 2021, while he was incarcerated.

justice system [and] [c]ooperate with the Office of Adult Probation" (5) "[v]isit [Jadiel] as often as [the department] permits" and (6) "[t]ell [the department] the names and addresses of the grandparents of [Jadiel]."

Significantly, on September 7, 2020, approximately one month after the birth of the child, and following the issuance of the specific steps, including the step that he "[n]ot get involved with the criminal justice system," the respondent was arrested and incarcerated on criminal charges, including assault in the second degree and robbery in the second degree. The record further reflects that reunification services were provided to the respondent in the brief period between when the petitioner gained custody of Jadiel in August, 2020, and September 7, 2020, when the respondent was incarcerated. Specifically, the record reflects the undisputed fact that, prior to the respondent's incarceration on September 7, 2020, the respondent was offered fourteen virtual supervised visits with Jadiel but attended only one visit. At the time of this visit, the respondent was "observed to be in bed and had difficulty keeping his eyes open."

The evidence in the record also supports the court's finding that "[w]hen [Jadiel] first came into the care of the [petitioner] in 2020 via [the order of temporary custody], the department met with the . . . [respondent] to discuss services." Specifically, the summary of facts dated August 5, 2020, states that "[t]he [d]epartment held a considered removal meeting on [August 5, 2020] and encouraged . . . [the respondent] to bring family supports for [Jadiel]." The summary of facts further indicates that the department provided case management to the family and offered the respondent substance abuse services through its referrals. Finally, the summary indicates that the department had attempted to establish in person and telephone contact with the

respondent and had encouraged the respondent's sobriety "through face-to-face interactions."

The social study admitted into evidence during the termination of parental rights trial indicates that "[the respondent] admitted to cocaine use in [August, 2020] and did not take the necessary steps to remain sober. In [August, 2020], [the respondent] agreed to [complete] a drug screen and a substance abuse evaluation while also agreeing to participate in any other recommendations. A referral was made to Travisano [Network] on [August 5, 2020] but the [respondent] never followed through on this referral." According to the social study, "[the respondent] has not kept [appointments] set by [the department] and has not participated in [a]dministrative case hearings." Specifically, the evidence reflects that from August, 2020, through January 21, 2022, the department held and invited the respondent to two administrative case reviews, but the respondent did not participate in either meeting.

Until his incarceration in September, 2020, the respondent did not inform the department, his attorney, or the attorney for Jadiel of his whereabouts. The social study attributed this to the respondent's struggles with "homelessness, substance abuse, and legal troubles resulting in incarcerations." See *In re Katia M.*, supra, 124 Conn. App. 665 (respondent's failure to keep department personnel apprised of his whereabouts and failure to communicate through relatives, counselors or telephone supports court's finding that respondent was unwilling or unable to benefit from reunification services). Although the respondent was required, pursuant to the specific steps ordered in August, 2020, to provide the department with the names and addresses of Jadiel's grandparents, he failed to do so until November 8, 2021, more than one year after Jadiel came into contact with the department. After receiving this information, the

department reached out to the grandparents, but they did not respond to the department.

Following the respondent's incarceration on September 7, 2020, and continuing through the filing of the petition for termination of the respondent's parental rights on January 24, 2022, the department's ability to offer services to the defendant was limited by several factors. First, as the court found, only the Department of Correction has the authority to provide services such as mental health and substance abuse counseling for incarcerated individuals.[9] The services that were potentially available to the respondent were further limited due to the restrictions in place due to the COVID-19 pandemic. Finally, the record reveals that the respondent did not remain in any facility long enough to complete treatment.[10]

The record reflects, however, that the department continued to make efforts to reunify the respondent and Jadiel during this time, but the respondent did not make use of the services that were provided. "[T]he inevitable restraints imposed by incarceration do not

[9] According to the respondent, "the state's responsibility to make reasonable efforts to reunify the respondent with his child should not be wiped away simply because one agency oversees the reunification efforts while another has custody of the respondent." To the extent the respondent asserts that this constitutes a violation of due process, we note that this claim was not raised in the trial court. Further, the respondent has not requested review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 7881, 120 A.3d 1188 (2015), the requirements of which are discussed in part II of this opinion. "[T]he [respondent's] brief neither includes a *Golding* analysis nor requests extraordinary review of her claim under any other exception to the preservation rule. For this reason alone, the [respondent] has failed to adequately brief [this] constitutional claim and the claim is deemed abandoned." *Guiliano* v. *Jefferson Radiology, P.C.*, 206 Conn. App. 603, 624, 261 A.3d 140 (2021).

[10] The respondent was asked at trial whether he had tried to obtain services while incarcerated. In response, the respondent testified that he "wrote to [his] counselor two or three times, and the only reply [he] ever received was that they didn't have services available at that location . . . ."

in themselves excuse a failure to make use of available though limited resources for contact with a distant child." (Emphasis omitted; internal quotation marks omitted.) *In re Katia M.*, supra, 124 Conn. App. 664–65. In this regard, the department offered monthly visitation between the respondent and Jadiel; the respondent, however, only visited with Jadiel three times. Further, the court specifically found that while the respondent was incarcerated, the department followed up with him every month regarding Jadiel and this case. See *In re Katia M.*, supra, 124 Conn. App 668–69 (while respondent was incarcerated, department facilitated visits between him and child, communicated with respondent's family monthly, and attempted to contact respondent by calling correctional institution and sending him letters). The respondent was placed on a waiting list after being assessed for services in September, 2020. The record reflects, however, that he had the opportunity to participate voluntarily in fellowships and to connect with correctional counselors at any point during his incarceration but did not do so. The social study indicates that the respondent "failed to demonstrate insight into how his substance use has impacted his ability to parent his child."

Reading the court's memorandum of decision as a whole; see *In re Jason R.*, supra, 306 Conn. 453; and construing the evidence in the light most favorable to sustaining the judgment of the trial court; see *In re Cameron W.*, supra, 194 Conn. App. 667; we conclude that the court's determination that the respondent was unable or unwilling to benefit from the department's reunification efforts was not clearly erroneous.[11]

---

[11] Pursuant to § 17a-112 (j) (1), "[t]he [petitioner] must prove [by clear and convincing evidence] *either* that [the department] has made reasonable efforts to reunify or *alternatively*, that the parent is unwilling or unable to benefit from reunification efforts. Section 17a-112 (j) clearly provides that the [petitioner] is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original; internal quotation marks omitted.) *In re Caiden B.*, 220 Conn. 326, 361 n.22,

## II

The respondent next claims that the department's failure to provide him with services during his incarceration violated his right to equal protection guaranteed under the federal and state constitutions. The respondent concedes that this claim was not preserved at trial and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We conclude that the record is inadequate to review the respondent's unpreserved claim.

"The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike. . . . Conversely, the equal protection clause places no restrictions on the state's authority to treat dissimilar persons in a dissimilar manner. . . . Thus, [t]o implicate the equal protection [clause] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . [Consequently], the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons [purporting to be] similarly situated. . . . The similarly situated inquiry focuses on whether the [respondent is] similarly situated to another group for purposes of the challenged government action. . . . Thus, [t]his initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Stuart*

---

297 A.3d 1025, cert. denied, 348 Conn. 904, 301 A.3d 527 (2023). Because we conclude that the court properly found that the respondent was unable or unwilling to benefit from reunification efforts, a finding that is sufficient to satisfy § 17a-112 (j), we need not address the merits of the respondent's additional claim that the court erred in finding that the department's efforts to reunify the respondent with Jadiel were reasonable.

v. *Commissioner of Correction*, 266 Conn. 596, 601–602, 834 A.2d 52 (2003).

"After this initial inquiry, the court must . . . determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard [under which] the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 216 Conn. App. 570, 586–87, 286 A.3d 449 (2022). "A party challenging a law under rational basis review bears the burden of proving that the law's class-based distinctions are wholly irrational." *State* v. *Dyous*, 307 Conn. 299, 317, 53 A.3d 153 (2012).

The respondent argues that the right to family integrity is fundamental and that § 17a-112, in practice, "infringes upon that fundamental right by treating similarly situated persons differently based upon their ability to make bond and secure their individual liberty while awaiting disposition of their criminal charges." The respondent, therefore, argues that the strict scrutiny standard of review applies to this claim. The petitioner counters that the reasonable efforts requirement is a statutory requirement rather than a constitutionally mandated prerequisite to termination of parental rights and, thus, the respondent has failed to demonstrate the violation of a fundamental right. The petitioner, therefore, argues that the rational basis standard of review applies to the respondent's claim. We need not decide whether the strict scrutiny standard of review

or the rational basis standard of review applies to this claim because, regardless of which standard applies, the record is inadequate to review this claim.

Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel*, supra, 317 Conn. 781, "a [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness beyond a reasonable doubt. . . . [T]he inability to meet any one prong requires a determination that the [respondent's] claim must fail. . . . The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Skylar B.*, 204 Conn. App. 729, 738–39, 254 A.3d 928 (2021).

"In assessing whether the first prong of *Golding* has been satisfied, it is well recognized that [t]he [respondent] bears the responsibility for providing a record that is adequate for review of [his] claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the [respondent's] claim. . . . The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred." (Internal quotation marks omitted.) *In re Riley B.*, 203

Conn. App. 627, 637–38, 248 A.3d 756, cert. denied, 336 Conn. 943, 250 A.3d 40 (2021).

The crux of the respondent's claim is that the statutory scheme as applied to this case creates two distinct classes of people—those who remain incarcerated while awaiting adjudication of their criminal charges (i.e., indigent individuals) and those who have the means and ability to ensure their release while awaiting criminal trial. According to the respondent, individuals in the first category are denied access to the reunification services necessary to achieve rehabilitation under § 17a-112, while those in the second category have access to reunification services. The respondent contends that this claim is reviewable under *Golding* because the record establishes that he was incarcerated, but not convicted, during the relevant portion of the child protection case and that "[t]he necessary factual predicate that exists outside the record—that some people accused of crimes can post bond and remain free while awaiting trial and [others] cannot—is knowledge so common that it need not be established on the record." We disagree.

If, as argued by the respondent, this claim is subject to the strict scrutiny standard of review, the state was required to demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. See *Taylor* v. *Commissioner*, supra, 216 Conn. App. 586. Because this claim was not raised in the trial court, however, the record is devoid of any evidence regarding the reasons that the department may be unable to provide the same level of services to incarcerated individuals.[12] Similarly, if, as argued by the petitioner, this claim is subject to the rational basis standard

___

[12] As the petitioner aptly points out in her appellate brief, "because neither the department nor [the Department of Correction] knew that [the respondent] intended to raise an equal protection argument, they did not submit their own evidence about the nondiscriminatory reasons they could not provide services. They had no opportunity to provide details about, for

of review, the respondent was required to prove "that the law's class-based distinctions are wholly irrational." *State* v. *Dyous*, supra, 307 Conn. 317. In this regard, the respondent simply argues that "there can be no rational basis for treating people arrested for the same criminal conduct differently with regard to reunification efforts based solely on the parent's ability to secure pretrial release." The respondent, however, presented no evidence regarding why the department may be unable to provide the same level of services to incarcerated individuals and how the department's actions in this regard were "wholly irrational." In the absence of the basic factual predicate underlying the respondent's equal protection claim, we conclude that the record is insufficient to permit us to review this claim. See *State* v. *Anonymous*, 179 Conn. 155, 167–68, 425 A.2d 939 (1979) (rejecting claim of "class bias against indigent persons" in termination of parental rights proceeding when defendant presented court "with nothing but suppositions and allegations to support this claim").

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the respondent's claim] would be entirely speculative." (Internal quotation marks omitted.) *In re Riley B.*, supra, 203 Conn. App. 639. On the basis of the foregoing, we decline

instance, the protocols governing [the Department of Correction's] authority over presentence inmates, which types of services [the Department of Correction] does typically make available and which it does not, the department's ability to work with [the Department of Correction] to provide services, how different services might present different challenges (e.g., visitation, mental health, substance abuse, parenting), how different inmates present different concerns (e.g., the inmate's risk assessment, the gravity of the underlying issues), how different institutions might have different logistical limitations (e.g., program's capacity, staffing, security), and how [the COVID-19 pandemic] affected all these issues."

to review the respondent's unpreserved constitutional claim because it fails the first prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.